IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BILLEE A. COMBS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 10-578-CJP** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Billee A. Combs is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1]

**Procedural History**

Ms. Combs applied for benefits in June, 2007, alleging disability beginning on December 1, 2005. (Tr. 164, 167). Her application was denied initially and on reconsideration. After holding a hearing, ALJ Joseph W. Warzycki denied the application for benefits in a decision dated October 27, 2009. (Tr. 9-18). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issue Raised by Plaintiff**

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 19.

1

As her only point, plaintiff argues that the ALJ erred in finding that she did not meet the requirements of Listing 4.04, ischemic heart disease.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Combs is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing **Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richard v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Warzycki followed the five-step analytical framework described above. He determined that Ms. Combs had not been engaged in substantial gainful activity since the alleged onset date, and that she has severe impairments of coronary artery disease and obesity. Based on

3

the testimony of an impartial medical expert, the ALJ determined that these impairments do not meet or equal a listed impairment. The ALJ found that Ms. Combs has the residual functional capacity to perform a limited range of work at the light exertional level. A vocational expert (VE) testified that she could perform jobs which exist in significant numbers in the national and local economy. The ALJ accepted this testimony, and found that she is not disabled. (Tr. 9-18).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the issue raised by plaintiff. Because plaintiff does not raise any issue with regard to her alleged mental impairment, the Court will not discuss that evidence.

1. **Agency Forms**

Ms. Combs was born in 1969, and was almost 36 years old when she allegedly became disabled. (Tr. 206). She was last insured for DIB through December 31, 2010. (Tr. 206).

A Work History Report indicates that Ms. Combs' past work was taking care of elderly people as a Certified Nurse Assistant from 1989 through 2005. (Tr. 209-210).

2. **Evidentiary Hearing**

The initial evidentiary hearing took place on June 11, 2009. Plaintiff was represented by an attorney. (Tr. 30). She testified that she lived with her parents in Caseyville, Illinois. (Tr. 33). She was 39 years old, and was 5'3" tall and weighed 305 pounds. (Tr. 34).

Ms. Combs completed high school and one year of college. She had a certificate in accounting, but she had never worked in that field. (Tr. 36). In 1989, she became a Certified Nurse Assistant. She tried to go back to work after her first heart attack in May, 2005, but was unable to do it. (Tr. 37).

Ms. Combs testified that she has limited daily activities because she has no energy and gets out of breath. She helps a little around the house with dishes and laundry. She spends her time watching televison, playing on her computer and sometimes reading books. (Tr. 40-43).

She said that she has had four "heart attacks." (Tr. 37-38). The last one was in May, 2007. (Tr. 49). At the time of her first heart attack, she was smoking three packs of cigarettes a day. She was still smoking, but less than a pack a day at the time of the hearing. (Tr. 45). She takes several medicines, but the only side effect is that Ativan makes her feel tired. (Tr. 50).

Susan Shea testified as a vocational expert. She testified that plaintiff's past work was semiskilled and heavy. (Tr. 57-58). The ALJ asked her to assume a person capable of sedentary work limited to only occasional climbing, balancing, stooping, crouching, kneeling and crawling, and no ladders, ropes or scaffolds. The VE testified that this person could not do plaintiff's past relevant work. She could, however, do the jobs of assembler, sedentary machine worker and table worker, which exist in significant numbers. (Tr. 58-59).

A supplemental hearing was held on September 29, 2009. The ALJ explained that, after the first hearing, additional medical records were submitted and plaintiff alleged that she met a Listing. Therefore, the ALJ had arranged for the testimony of a medical expert, Dr. Morris Alex. (Tr. 21).[3] Dr. Alex did not examine plaintiff. Based on a review of her medical records, he testified about whether she met Listing 4.04. He testified that she had a stress exercise test on with she achieved 4.6 METs. He said that an "ideal test" requires five METs. (Tr. 25). Her only symptom during the test was shortness of breath. She had no chest pain and had a good blood pressure response. The test was "nondiagnostic for ischemia." Thus, he stated, she did

---

[3]Dr. Alex' resume is at Tr. 157-158.

not meet Listing 4.04A. She did not meet 4.04B because she did not have four ischemic episodes in a twelve month period. Lastly, she did not meet 4.04C because "she did have an exercise stress test." (Tr. 24-25).

Dr. Alex noted that there was a discrepancy in the records as to whether her right coronary artery was occluded. A record dated September 7, 2006, says her right coronary artery was normal, but a record dated September 11, 2006, says her right coronary artery is 90% occluded. (Tr. 25).

On questioning by plaintiff's attorney, Dr. Alex explained that she did not meet 4.04C because she did have a stress test, and because, even if she had the blockage required by the Listing, she did not have the required level of symptoms. (Tr. 26).

3.   **Medical Records**

Ms. Combs was admitted to Anderson Hospital in Maryville, Illinois, after experiencing chest pain in May, 2005. She was morbidly obese and was a heavy smoker. She was treated for acute coronary syndrome. (Tr. 308-309).

Dr. Atul Shah performed cardiac catheterization with stent placement on May 11, 2005. She had 90% stenosis in the left anterior descending artery and in the right coronary artery. (Tr. 433-434).

In September, 2006, she had a heart attack and was admitted to St. Elizabeth's Hospital in Belleville, Illinois. Dr. Shah did a repeat catheterization. (Tr. 336-339, 428-431).

In May, 2007, Ms. Combs again presented to the hospital with chest pains. Dr. Shah did another catheterization procedure on May 21, 2007. He concluded that she had an occluded left anterior descending artery and a small right coronary artery with severe stenosis. He felt that she did not need coronary bypass, and recommended that she continue medical therapy. He

increased her beta blockers and said she needed to modify her risk factors, i.e., lose weight and stop smoking. (Tr. 541).

Dr. Raymond Leung performed a consultative examination on October 25, 2007. (Tr. 507-508). A cardiac stress test was done by Dr. Razzaq in conjunction with that examination. Dr. Razzaq prepared a narrative report of the test. He noted her history of heart attack and repeated cardiac catheterizations and stent placement. She told him that she had not had chest pain since the last procedure in May, 2007, but she did have shortness of breath with exertion. Dr. Razzaq reported that her resting ECG showed normal sinus rhythm. On the stress test, she could only exercise for 3 minutes and 5 seconds due to shortness of breath and fatigue. She had no chest pain or cardiac arrhythmias. She achieved 4.6 METs at peak exercise.[4] In the conclusions section of the report, Dr. Razzaq said that her exercise tolerance was considered fair, having achieved 83% of the target heart rate, and she had normal heart rate and blood pressure with 3 minutes and 5 seconds of exercise. She had a maximum of 0.7mm upsloping ST-segment depression in the inferior leads and a maximum of 0.1 mm upsloping ST-segment depression in the lateral leads, "not diagnostic for ischemia." He said that the test is "considered to be negative by ECG criteria." He also noted that, in view of her history, "an exercise cardiolite test may be considered for further evaluation." (Tr. 510-511).

Ms. Combs next saw Dr. Shah on December 3, 2007. She was "doing well from a cardiac standpoint." He advised her to get a lipid profile and to continue her current medications. She was to follow-up in six months. (Tr. 530).

Plaintiff did not return to Dr. Shah's office for eighteen months. She was next seen there

---

[4]METs means "metabolic equivalents." See, 20 C.F.R. Pt. 404, Subpt. P, App.1., § 4.00(C)(3).

7

on June 19, 2009. (Tr. 538). She indicated that she had taken nitroglycerin once or twice in the last six months for angina brought on by activity. She had not had angina in the last two months. She did report shortness of breath on exertion. Dr. Shah noted that she had not made any significant effort at weight loss and was still morbidly obese. She continued to smoke a pack of cigarettes a day. She was having trouble with depression and anxiety. His assessment was coronary artery disease/ischemic heart disease, hypertension, high cholesterol, morbid obesity and tobacco abuse. He told her she needed to lose weight and stop smoking. He referred her to Dr. Wade, her primary care physician, for medication to help with her depression and anxiety. (Tr. 539-540).

## Analysis

Plaintiff's sole argument is that she meets or equals the requirements of Listing 4.04, ischemic heart disease. Ischemic heart disease "results when one or more of your coronary arteries is narrowed or obstructed or, in rare situations, constricted due to vasospasm, interfering with the normal flow of blood to your heart muscle (ischemia)." 20 C.F.R. Pt. 404, Subpt. P, App.1, §4.00(E)(1).

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled. In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The claimant bears the burden of proving that she meets or equals a listed impairment. ***Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999).**

The requirements of Listing 4.04 are as follows:

Ischemic heart disease, with symptoms due to myocardial ischemia, as described in

4.00E3–4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:

A. Sign-or symptom-limited exercise tolerance test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:

> 1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least -0.10 millivolts (–1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than aVR, and depression of at least -0.10 millivolts lasting for at least 1 minute of recovery; or

> 2. At least 0.1 millivolt (1 mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery; or

> 3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or

> 4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

OR

B. Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12–month period (see 4.00A3e).

OR

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1.     1. Angiographic evidence showing:

> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

> b. 70 percent or more narrowing of another nonbypassed coronary artery; or

> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

> e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

    Plaintiff argues that she should not have been evaluated under Listing 4.04A because her

stress test was not valid. She argues that she should be evaluated under Listing 4.04C, and that she meets or equals both the blockage and limitations requirements of 4.04C. (Plaintiff does not argue that she meets the requirements of Listing 4.04B).

Plaintiff's argument is premised on a faulty understanding of the results of her stress test and on a faulty reading of 4.04A. She argues that her stress test was not valid because she did not reach "the required level of 5.0 METs, making it impossible to determine whether the required finding occurred at a level of 5.0 METs or less." Doc. 20, p. 9. However, as the Commissioner points out, the Listing does *not* require that a level of 5.0 METs be reached for a valid test. Listing 4.04A clearly requires a test "demonstrating at least one of the following manifestations at a workload equivalent to 5 METs *or less*." (emphasis added). Ms. Combs reached a level of 4.6 METs at peak exercise. (Tr. 510). Dr. Razzaq did not suggest in any way that the stress test was invalid for this reason, and the plain language of Listing 4.04A indicates that a level of 5.0 METs or less is valid.

Plaintiff goes on to suggest that she could very well have met the threshold reading of 1.0 mm as required by 4.04A(A)(2) if she had gotten to a level of 5.0 METs because she had a reading of 0.7 mm at a level of 4.6 METs. There is absolutely no support in the record or in the regulations for the notion that stress test readings progress in this way. This is not a matter of intuitive knowledge. "The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong." **Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990).**

The medical evidence in the record establishes that the stress test was valid and was not diagnostic of ischemic heart disease. Dr. Razzaq's report clearly stated this conclusion. At the

hearing, Dr. Alex acknowledged that an "ideal" test requires a level of 5.0 METs, but he testified unequivocally that the test was "nondiagnostic for ischemia," and she did not meet the requirements of 4.04A. (Tr. 25).

Nonetheless, plaintiff argues that she should be evaluated under Listing 4.04C. However, 4.04C, by its terms, is applied only "in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test," and where a medical consultant " has concluded that performance of exercise tolerance testing would present a significant risk to the individual..." Here, as Dr. Alex testified, 4.04C would not apply because an exercise tolerance (stress) test was performed. See, Tr. 25-26. In any event, Dr. Alex testified that, even if she had the required level of blockage, Ms. Combs would not meet the level of symptoms required for 4.04C. (Tr. 26). The only evidence to the contrary cited by plaintiff is a statement by Dr. Shah that she could only walk 10 to 20 feet without shortness of breath and a rapid heart rate. However, that statement is what Ms. Combs told Dr. Shah, and not what he observed. On that visit, Dr. Shah noted that she had not been in to see him for 18 months. He did not change her medication at all, and he recommended again that she lose weight and stop smoking. (Tr. 539-540). The evidence cited by plaintiff does not contradict Dr. Alex' testimony.

Lastly, plaintiff suggests that a cardiolite stress test should have been done. She bases this on Dr. Razzaq's statement that "an exercise cardiolite test may be considered for further evaluation." (Tr. 511). This is a red herring. Listing 4.00(c)(14) explains that a cardiolite stress test is a drug-induced stress test, and is used "when you cannot exercise or cannot exercise enough to achieve the desired cardiac stress." Again, this argument relies on the faulty premise that Ms. Combs' stress test was invalid. As there is nothing in the medical evidence to suggest that the test was actually invalid, plaintiff' point is denied.

## Conclusion

After careful consideration, this Court is convinced that the decision of the ALJ is supported by substantial evidence in the record as a whole, and that no errors of law were made. Therefore, the final decision of the Commissioner of Social Security, finding that plaintiff Billee A. Combs is not disabled, is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:  November 15, 2011.**


                                    s/ Clifford J. Proud
                                    **CLIFFORD J. PROUD**
                                    **UNITED STATES MAGISTRATE JUDGE**